IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tarpon Towers II, LLC, et al.,           Case No. 3:21 CV 1988

          Plaintiffs,           MEMORANDUM OPINION

          -vs-           JUDGE JACK ZOUHARY

City of Sylvania, et al.,

          Defendants.

## INTRODUCTION

In January 2021, Plaintiffs Tarpon Towers II, LLC, and Cellco Partnership d/b/a Verizon Wireless applied for a special-use permit to construct a cell-phone tower in Sylvania, Ohio (Doc. 24 at ¶¶ 8–9). Following a wave of municipal administrative proceedings over the course of nine months, Defendant Sylvania City Council denied the application. This suit followed.

Plaintiffs allege the denial violated the Telecommunications Act of 1996 ("TCA"). Both parties move for Summary Judgment (Docs. 26 & 27). The matter is fully briefed (Docs. 26–29).

## BACKGROUND

Plaintiffs own several "personal wireless service facilities across the country," and contract with Verizon Wireless "to assist in providing wireless telecommunication services" (Doc. 24 at ¶¶ 1–5). Defendant City of Sylvania is a municipality that "maintains several boards and commissions, including the Municipal Planning Commission and Zoning and Annexation Committee" (*id.* at ¶¶ 6–7).

In January 2021, Plaintiffs entered into a lease agreement with the Sylvania City School District Board of Education in hopes of constructing a wireless cell tower (*id.* at ¶ 9). That month, Plaintiffs applied for a special-use permit, requesting permission to build a tower on the property (*id.* at ¶ 8). In February, the City Council referred the application to the Municipal Planning Commission (*id.* at ¶ 12).

In March, the Planning Commission recommended the application for approval "by a 5-0 unanimous vote" (*id.* at ¶ 13). Then, at the March 10 City Council meeting, "several different concerns were raised" by various members of the public, and Plaintiffs responded to the Council's questions about construction and decommission of the tower (*id.* at ¶¶ 15, 17–18).

A City Council hearing was held in April, where Plaintiffs presented evidence and counsel heard questions and concerns from the community (*id.* at ¶¶ 22–27). Plaintiffs' evidence included testimony from a radio-frequency engineer who "presented photographic simulations of the proposed [t]ower and indicated that the [t]ower would be 130 [feet] tall with a 10 [foot] lightning rod at the top" (*id.* at ¶ 22). Plaintiffs "reiterated [their position] that the proposed cell phone [t]ower would result in an increase in cell phone coverage, as well as offloading the amount of calls being processed through the surrounding cell phone towers, thereby resulting in better coverage for the City" (*id.* at ¶ 23). Plaintiffs also addressed the possibility of other locations for the tower, which were allegedly unfeasible (*id.* at ¶ 26).

The Zoning and Annexation Committee met again in May, hearing more testimony from Plaintiffs' expert about cell coverage (*id.* at ¶ 29). The expert testified the tower would "provide service for all of the mobile devices for students at Sylvania Northview High School, Lourdes College, and those individuals located in the surrounding neighborhoods," alleviating congestion of nearby towers and improving overall service in the area (*id.* at ¶¶ 30–31). He further discussed why alternative sites were not possible (*id.* at ¶35). A School Board member commented that the "current cell phone coverage at Sylvania Northview High School [is] a safety issue," while members of the public spoke about "alleged potential health concerns and risks associated with the emissions of radio frequencies" and "potential fires, falling ice shards, damage due to a tornado, and aesthetic concerns relating to the proposed cell phone tower" (*id.* at ¶¶ 32–34). There were also multiple statements from community members about environmental effects of the tower (*id.* at ¶¶ 33–34).

At a City Council meeting in August, the application was sent back to the Zoning and Annexation Committee "for additional discussion" the following month (*id.* at ¶ 40). At that Zoning and Annexation Committee meeting on September 3, council-member David Haynam "went through the statutory criteria under the City of Sylvania Zoning Code for an application for a special use permit" (*id.* at ¶ 41). On September 20, "the City Council met and denied the application" (*id.* at ¶ 43). Plaintiffs then filed this suit.

The issues before this Court are whether: (1) Defendants issued a written denial in compliance with the TCA; (2) the denial was supported by substantial evidence contained in a written record; and (3) the denial effectively prohibited personal wireless services (*see* Docs. 26 & 27). Each is addressed below.

## DISCUSSION

This case turns on the connection between the TCA and Sylvania's Municipal Ordinances. The TCA seeks to preserve local zoning authority, but imposes specific limitations with respect to cell towers. *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 300 (2015). Federal regulations outline how a municipality may deny a request to build a cell tower and the justifications required for such a denial. *Id.*

***Statutory Framework***

Under the TCA, "[a]ny decision by a State or local government . . . to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). Further, any state or local ordinances regulating "the placement, construction, and modification of personal wireless service facilities . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

There are two relevant provisions of Sylvania's Municipal Ordinances -- "use" and "height." First, Buildings in R-1 residential Districts, such as the lot at issue in this case, must be constructed for a

3

"permitted" use (Doc. 27 at 9). *See* Sylvania Planning and Zoning Code 1117.06. If not, a party must apply for a special-use permit. City Council then considers the following special-use criteria:

> (a) The special use is necessary or desirable for the public convenience at that location.
> (b) The special use is so designed, located and proposed to be operated that the public health, safety and welfare will be protected.
> (c) The special use will not cause substantial injury to the value of other property in the neighborhood in which it is to be located.
> (d) The special use conforms, with the exception of planned developments, to the applicable regulations of the district in which it is to be located, including yard and height restrictions and also conforms to the requirements for off-street parking and loading facilities as set forth in Chapters 1157 and 1159.

*Id.* at 1153.05.

Second, structures must also meet the height restriction: "No building shall be erected or enlarged to exceed two and one-half stories or thirty-five feet in height." *Id.* at 1117.04. But there's an exception -- it states that if "erected in accordance with all other laws of the City . . . *wireless, television or radio towers* and necessary mechanical appurtenances" may exceed the maximum height regulations. *Id.* at 1161.04.

## THE DENIAL

In *Roswell*, the U.S. Supreme Court set the tone for a locality's responsibilities when denying an application. The TCA mandates that "any decision to deny a request to build a tower 'shall be in writing and supported by substantial evidence.'" *Id.* at 300 (citation omitted). The Court has interpreted this to mean that a municipality must issue a denial that is: (1) conveyed in writing and (2) accompanied by reasons in a written instrument at essentially the same time. *Id.* at 304.

There are no strict requirements for how the written reasons must be presented, and they are not required to be in the same document as the denial. *Id.* at 295. *See also Cap. Telecom Holdings II, LLC v. Grove City*, 403 F. Supp. 3d 643, 653 (S.D. Ohio 2019) ("Meeting minutes containing a municipality's decision satisfies the 'in writing' requirement of the TCA."). Accordingly, the writing can support a denial if "the reasons are sufficiently clear and [were] provided or made accessible to [Plaintiffs]

4

essentially contemporaneously with the written denial letter or notice." *Roswell*, 574 U.S. at 295. The September 20, 2021 City Council meeting minutes read as follows (Doc. 24-21 at 1):

> Haynam presented and read aloud by title only, proposed Ordinance No. 64-2021, a written copy of same having been previously furnished to each member of Council, "Granting a Special Use Permit to allow the placement of a 130' wireless communication facility with a 10' lightning rod for a total height of 140' behind the Sylvania Northview High School Property at 5403 Silica Drive, Sylvania, Ohio, on the application of Stephen E. Carr, Agent for Cellco Partnership dba Verizon Wireless and Tarpon Towers II, LLC, on the recommendation of the Municipal Planning Commission; and declaring an emergency"; Haynam moved, Frye seconded for passage of Ordinance No. 64-2021 as an emergency measure; roll call vote being: Richardson, Stough, Cappellini, Frye, Haynam, McCann, (0) yeas; (6) nays. The motion failed.

These minutes, which Plaintiffs note are the only written record of the denial, provide no reason for the decision.

*Roswell* made clear "that the [TCA] requires localities to provide reasons when they deny cell phone tower siting applications." *Id.* at 307. The reasons need not be in any particular document, "or even sophisticated," but they must be stated "with *sufficient clarity* in some [] written record issued *essentially contemporaneously* with the denial." *Id.* at 302, 307 (emphasis added). Here, Defendants offer no explanation -- none in the meeting minutes or anywhere else shortly after the meeting. Defendants failed their statutory obligation to set forth reasons "stated clearly enough to enable judicial review." *Id.* at 303.

This Court's analysis could end here. With no written reasons, this Court cannot evaluate whether substantial evidence sufficiently supports the denial. *See SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) ("[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained."). Nevertheless, this Court will also address the after-the-fact justifications provided in this lawsuit (Doc. 28 at 1–2).

### SUBSTANTIAL EVIDENCE

"Substantial evidence review is restricted to the evidence that was before the local governmental authority, and evidence from outside the administrative record is not permitted." *Eco-Site, Inc. v. City of*

5

*Huber Heights*, 2018 WL 3092901, at *5 (S.D. Ohio 2018). "There must be evidence. And not just any evidence -- evidence that is *substantial*. And substantial evidence must be substantiated by something." *T-Mobile Cent., LLC v. Charter Twp. of W. Bloomfield*, 691 F.3d 794, 801 (6th Cir. 2012). "Substantial evidence, in the usual context, has been construed to mean less than a preponderance, but more than a scintilla of evidence." *Id.* (citation omitted).

Defendants reference "an extensive list of concerns regarding the fact that the Special Use Application did not meet the criteria" (Doc. 26 at 10) (citing Doc. 24-20 at 5). They also assert "their denial was based on height restrictions and the negative impact on property values" (Doc. 28 at 1–2). But these arguments are unsupported in the record.

First, with respect to the height restriction, Defendants dial-in on two portions of the record. Defendants first cite the September 2021 Zoning and Annexation Committee meeting (Doc. 26 at 10), at which Haynam read the four criteria for a special-use permit, stating that the "tower clearly does not comply with [the] height restrictions" (Doc. 24-18 at 8). But there is no indication, in either his statements or the Municipal Ordinance, that a denial necessarily follows. To the contrary, the Ordinance specifically makes an exception for cell towers. *See* Sylvania Municipal Ordinance 1161.04 (a) (providing that the height exception applies to wireless towers). Defendants next point to the April Zoning and Annexation Committee meeting (Doc. 26 at 7). The transcript reveals that Leslie Brinning, the City's law director, merely answered a question about whether special-use permits run with the land -- not about Plaintiffs' tower (Doc. 24-9 at 20). Further, her answer cuts against Defendants' argument. Brinning stated future co-locators would be "permitted to be there" as long as they were the "same height" or lower than the tower *(id.)*. Having knowledge of Plaintiffs' application in April, it appears the law director was saying the *opposite* of what Defendants now argue. Plaintiffs' tower, and potential future structures on the property, could be constructed even though they did not comply with the general height restriction.

There is similarly no record that the structure would negatively impact property values. Defendants cite the September Zoning and Planning Committee meeting, where Haynam referenced testimony that the "cell phone tower would have an impact of up to [twenty] percent decrease in housing values for those homes in the vicinity of the tower" (Doc. 24-18 at 6). This testimony came from a community member who quoted two magazines and cited "research" on home values near cell towers (Doc. 24-12 at 51–53). But even she admitted that she "couldn't come up with anything for Sylvania specifically" (*id.* at 51). Moreover, none of the articles or research were provided to this Court.

While Sylvania Municipal Ordinance 1153.05(c) states that a special use must "not cause substantial injury to the value of other property, . . . [m]erely repeating an ordinance does not constitute substantial evidence." *West Bloomfield*, 691 F.3d at 801. "[I]f the terms of a local zoning ordinance allow a zoning board to deny a permit based on less than substantial evidence, or no evidence at all, and a permit is denied on that basis, the record would lack substantial evidence to justify the decision." *Id.* at 799. Even though Defendants claim their reasons are sufficiently supported by the Sylvania Municipal Ordinances, record evidence is still required to support Defendants' conclusion. *See id.* (citing *MetroPCS, Inc. v. City & Cty. of San Francisco*, 400 F.3d 715, 723–24 (9th Cir. 2005) ("[W]e must take applicable state and local regulations as we find them and evaluate the City decision's evidentiary support (or lack thereof) relative to those regulations.").

Nothing in the record supports the decision to deny Plaintiffs' application -- neither on the height requirement nor negative effect on property values. The denial is, frankly, a mystery, untethered from the City's statutory duty.

### EFFECTIVE PROHIBITION OF WIRELESS SERVICES

Defendants face yet another problem. The TCA specifically limits local zoning authority. It states: "The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof shall not prohibit or have the effect

7

of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). As such, contrary to Defendants' suggestions, a denial that otherwise complies with the TCA will still "violate the [TCA] if [it] result[s] in the effective prohibition of the provision of wireless services." *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 35 (1st Cir. 2014) (citation omitted). Even where multiple towers already exist within a municipality, "the denial of a single application can constitute a violation of this portion of the Act." *West Bloomfield*, 691 F.3d at 806.

The prohibition issue presents a separate legal question for this Court, requiring no deference to the administrative decision below. *See AT&T Mobile Servs., LLC v. Village of Corrales*, 642 F. App'x 886, 888–89 (10th Cir. 2016) (the question of prohibition under the TCA is "a legal one for the district court's consideration in the first instance, without any deference to a local zoning board"); *VoiceStream Minneapolis, Inc. v. St. Croix Cty.*, 342 F.3d 818, 833 (7th Cir. 2003) (acknowledging the substantial-evidence analysis is a separate issue from effective prohibition under the TCA).

The Sixth Circuit calls for a two-prong test to determine whether a denial effectively prohibits personal wireless services. There "must be (1) a showing of a significant gap in service coverage and (2) some inquiry into the feasibility of alternative facilities or site locations." *West Bloomfield*, 691 F.3d at 805 (citation and internal quotation marks omitted). If both prongs are met, denial of an application is improper. Having completely avoided this issue in their filings, Defendants hastily brush over the topic in their Response (Doc. 28 at 3). But Defendants fail to recognize that even if they presented a solid record and statutorily compliant written denial, that denial may still violate TCA Section 322 if it would result in a significant gap in coverage.

As to the first prong, Plaintiffs show evidence of a significant gap in coverage. A "'significant gap' refers only to a carrier's *own* service, not that of any carrier." *West Bloomfield*, 691 F.3d at 807 (quoting *T-Mobile Cent. LLC v. City of Fraser*, 679 F. Supp. 2d 721, 729 (E.D. Mich. 2009)). Plaintiffs provided testimony and research from a radio-frequency engineer, who testified that the City was in the

8

top ten worst zones in the region for service (Doc. 24-9 at 15). Plaintiffs also provided testimony from a school-board member who stated the gap was significant enough to pose a "safety issue" (Doc. 24 at ¶ 32). Two additional representatives explained the significant increase in service this tower would provide to cover the gap (Docs. 24-1 at 16–20, 24-9 at 13–14). Plenty of evidence to satisfy the legal standard.

The second prong is a low bar -- it requires Plaintiffs to show "that a good faith effort has been made to identify and evaluate less intrusive alternatives." *West Bloomfield*, 691 F.3d at 808. The record reflects many attempts from Plaintiffs to find alternative sites and potential co-locations (adding to existing towers), and provides explanation as to why they were not possible (Docs. 24-1 at 19, 24-9 at 25–32). According to Plaintiffs' expert, even if all the locations they initially contacted were willing to lease land, "proposed alternative sites would not be effective in alleviating the issues" (Doc. 24 at ¶ 35). Again, more than enough to clear the threshold.

### REMEDY

Defendants suggest the appropriate remedy would be to remand the application to City Council for a do-over -- but provide no legal support for such a result (Doc. 11 at ¶ 8). Plaintiff responds that the appropriate remedy here is for this Court to order the City to approve the application and allow Plaintiffs to construct the cell tower (Doc. 27-1 at 7). This rings true. The Sixth Circuit upheld the same remedy under similar facts in *West Bloomfield*, 691 F.3d at 809. There, the district court ordered the township to "issue all necessary permits and approvals for the construction of [p]laintiff's proposed wireless communications facility" because the denial violated the TCA. *T-Mobile Cent. LLC v. Charter Twp. of West Bloomfield*, 2011 WL 1299357, at *7 (2011). Here, the same violations are present, and the same remedy is appropriate. *See Tenn. ex rel. Wireless Income Props., LLC v. City of Chattanooga*, 403 F.3d 392, 399 (6th Cir. 2005) (noting "that an injunction requiring the issuance of a permit ordinarily is a proper remedy when a governmental body has denied a permit without substantial evidence supporting the denial.").

## Conclusion

Defendants violated the TCA by (1) failing to issue a denial with contemporaneous, written reasons; (2) not supporting the denial with substantial evidence; and (3) by effectively prohibiting the provision of wireless communications.  Plaintiffs' requested injunctive relief, to compel approval of the application, is appropriate.  Defendants shall issue all necessary permits and approvals for the construction of the proposed cell tower.  Plaintiffs' Motion (Doc. 27) is granted; Defendants' Motion (Doc. 26) is denied.

IT IS SO ORDERED.

                                                       s/ *Jack Zouhary*
                                                       JACK ZOUHARY
                                                       U. S. DISTRICT JUDGE

                                                       September 1, 2022